**BANK OF TEXAS, Appellant,**

**v.**

**VR ELECTRIC, INC., Appellee.**

**No. 01-07-00308-CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 2008.

---

Maelissa Brauer Lipman, Thomas Neal Nobles, Watt, Beckworth, Thompson & Henneman, L.L.P., Houston, John D. Clayman, Frederic Dorwart, Lawyers, Tulsa, OK, for appellant.

Douglas A. Sandvig, Douglas A. Sandvig, P.C., Houston, for appellee.

Panel consists of Justices NUCHIA, ALCALA, and HANKS.

## OPINION ON REHEARING

ELSA ALCALA, Justice.

This is a dispute about payment of a forged check for $8,276. Appellant, Bank of Texas ("Bank"), filed a motion for rehearing. We received a response from VR Electric ("VR"). We grant rehearing and withdraw our opinion and judgment issued on September 4, 2008.

The Bank appeals from the trial court's judgment awarding appellee, VR, damages for paying VR's check that was forged. The judgment against the Bank was for breach of contract and the judgment against the co-defendant, Frank C. Mata, was for negligence.[1] The two defendants were found jointly and severally liable for their payment of the forged check.

The Bank's first five issues concern the application of the law as stated in section 3.406(a) of the Business and Commerce Code. TEX. BUS. & COM.CODE ANN. § 3.406(a) (Vernon 2002). In its first issue, the Bank asserts that the trial court erred by disregarding the jury's determination that the Bank met its duty of good faith and fair dealing to VR. In its second, third, fourth and fifth issues, the Bank contends that it cannot be found liable for the check because, in addition to the jury's finding that the Bank acted in good faith, the Bank proved that VR failed to exercise ordinary care that substantially contributed to the alteration of the check by leaving the check unattended and by not issuing a stop payment on the check. In response to this challenge by the Bank, VR presents a conditional cross-point that contends the trial court erred by "allowing a partial affirmative defense of negligence after ruling that the Bank failed to act in good faith as a matter of law."

The Business and Commerce Code is also the subject of the Bank's sixth issue. The Bank maintains that VR does not meet the terms of section 3.406(b) because VR "failed to meet its burden of proof" to show that the Bank failed to exercise ordinary care, which contributed to VR's loss. See TEX. BUS. & COM.CODE ANN. § 3.406(b).

The Bank's remaining three issues pertain to damages and attorney's fees. In its seventh issue, the Bank challenges the apportionment of damages under section 33.013 of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(b) (Vernon 2003). In its eighth issue, the Bank contends that the judgment cannot properly include any award for breach of contract because no element of the claim was submitted to the jury. In its ninth issue, the Bank challenges the amount of the attorney's fees.[2]

We conclude that VR's claim for breach of contract was conclusively proved and did not need to be submitted to the jury. Concerning whether VR met the requirements in the Business and Commerce Code, we conclude that (1) the trial court erred by disregarding the jury's finding that the Bank acted in good faith; (2) the Bank established that VR's failure to exercise ordinary care substantially contributed to the alteration of the check; and (3) the evidence is legally sufficient to uphold

---

1. Mata is not a party to this appeal. Mata answered the petition but did not appear at trial. The trial court entered a post-answer default judgment against him.

2. Although the Bank lists 11 issues in its "issues presented," the argument portion of its brief discusses nine issues that do not directly correlate to the 11 issues in the issues presented. For purposes of clarity, we describe the nine issues developed in the argument portion of the brief.

the jury's verdict that the Bank failed to exercise ordinary care in paying the check under section 3.406(b). *See* Tex. Bus. & Com.Code Ann. § 3.406(a),(b). We also conclude that Chapter 33 of the Texas Civil Practice and Remedies Code cannot be used to hold the Bank jointly and severally liable in this situation in which the Business and Commerce Code provides the mechanism for apportionment of damages, and that the amount of the award for attorney's fees is not excessive. We therefore affirm the judgment against the Bank.

## Background

VR had a depositary checking account with the Bank. In October 2003, Beverly Pennington, a bookkeeper for VR, placed an unsigned check from VR's account with the Bank for $8276 on the counter in front of the office of Terry Viohl, VR's president. Pennington often placed checks in this location for Viohl's signature because Viohl's office was very disorganized, and there was concern that the check would be lost if placed in his office. The counter on which the check was placed was next to the front entrance and accessible to anyone who entered VR's office.

On the day Pennington placed the check, which was made out to Viohl Electric, on the counter, Anthony Burlew, an employee of a contractor working with VR, walked into VR's office and took the unsigned check. Burlew signed Viohl's name to the front of the check and endorsed the check to himself. Burlew then took the check to Mata, a used car dealer, and endorsed the check to Mata in exchange for a car and cash. Mata accepted the check and deposited it into his account. Pennington and Viohl noticed the check was missing but did not request a stop payment order because they thought the check was lost in Viohl's office.

The Bank processed the check through its automated system and paid the check without verifying the signature of Viohl. According to Jean Fedigan, Vice President of Operations for Bank of Texas, the Bank had a verbal policy that it did not manually review the signature on checks that were processed through automated means if the amount was less than $100,000. However, Fedigan was inconsistent in referring to the amount, also stating the policy was only effective with respect to checks over $250,000. Because the check here was for $8276, under either amount, the signature on the check at issue would not have been verified manually.

The following month, when VR received its statement for October, it immediately notified the Bank that the check had been forged and asked that its account be credited for the amount of the check. The Bank decided it would not reimburse VR for the amount of the check because it determined VR acted negligently and it was unable to be reimbursed by Mata's bank.

VR brought suit against the Bank and Mata in January 2004. In its petition, VR asserted that the Bank breached its account agreement by paying an item that was not properly payable and that the Bank failed to exercise due care in the processing of the check. VR also sued Mata for accepting the check from Burlew. VR requested liquidated damages in the amount of the check as well as attorney's fees.

At the jury trial, three of the four questions given to the jury concerned negligence under the Business and Commerce Code. The jury's answer to the first question was in favor of the Bank, finding that the Bank complied with its duty of good faith and fair dealing. The second question asked the jury to determine whether "the negligence, if any, of [Bank, Mata,

and VR Electric] substantially contribute[d] to the occurrence," which the jury answered in the affirmative as to all three parties. Question three asked the jury to attribute a percentage of negligence to each of the parties based on its answer in question two. The jury responded that VR Electric and the Bank were each 15% responsible and Mata was 70% responsible.

At the jury trial, only the fourth question pertained to the attorney's fees for breach of contract. Question four asked the jury to determine reasonable attorney's fees for VR's attorneys. The jury answered with totals of $30,000 for preparation and trial, $12,000 for an appeal to the Court of Appeals, and $10,000 for an appeal to the Texas Supreme Court.

After receiving the jury's answers, VR filed a motion to disregard the jury's finding on question one, which the trial court granted. The Bank filed a motion to disregard the jury's finding on question two, which the trial court denied. The trial court then issued its final judgment, which stated,

> The Court grants Plaintiff's Motion to Disregard Jury Question One and finds that the Defendant, Bank of Texas, NA, failed to act in good faith, as a matter of law. The Court finds that Plaintiff, VR Electric, is entitled to judgment against Defendant, Bank of Texas, NA, on Plaintiff's claim of breach of contract for liquidated damages for the amount of the check, $8,276.78. The Court finds that Plaintiff, VR Electric, is entitled to judgment against Defendant, Frank C. Mata, d/b/a Tex Car Motors, on Plaintiff's claim under the Texas Business and Commerce Code, Section 3.406, for liquidated damages, subject to such Defendant's right to offset damages in the amount of 15%, for negligence attributed to Plaintiff, VR Electric, under the jury

verdict, for a net amount of $7,035.26. The Court finds that Frank C. Mata, d/b/a Tex Car Motors, and Bank of Texas, NA, are jointly and severally liable for that portion of the judgment together with prejudgment interest and attorney's fees.

. . . .

> Based on the jury's verdict, and the rulings and findings of the Court, it is ADJUDGED that:
> 1. Plaintiff, VR Electric is awarded judgment against Defendants, Bank of Texas, NA and Frank C. Mata, d/b/a Tex Car Motors, jointly and severally, in the amount of $7,035.26. . . .

The judgment further awarded prejudgment interest, postjudgment interest and attorney's fees against the Bank and Mata, jointly and severally.

### The Jury Charge for Breach of Contract

In its eighth issue, the Bank contends that VR never asked for or obtained a jury question on breach of contract and therefore waived any right to recover on that ground under Rule 279. The Bank asserts that the trial court erred by awarding VR attorney's fees because attorney's fees could only be recovered for breach of contract, and no instruction was submitted to the jury on the breach of contract claim.

#### A. Rule 279

Rule 279 provides that any issues excluded from the charge that are "not conclusively established under the evidence and no element of which is submitted or requested are waived." *See* Tex.R. Civ. P. 279. Under Rule 279, if a ground is not conclusively established, and at least one element is submitted to and found by the jury, the parties are considered to have agreed to waive a jury trial on the elements that were not submitted, and to

have submitted those issues to the trial court for resolution. *In re J.F.C.*, 96 S.W.3d 256, 262–63 (Tex.2002); *Country Village Homes v. Patterson*, 236 S.W.3d 413, 431–32 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

A claim is not waived under Rule 279 when the evidence conclusively establishes the elements of the offense, even if none of the elements of the offense is submitted to the jury for consideration. *See* Tex.R. Civ. P. 279. If a claim is established as a matter of law, no question must be submitted to the jury for consideration. *Brown v. Bank of Galveston*, 963 S.W.2d 511, 515 (Tex.1998); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex.2005) ("Jurors are not free to reach a verdict contrary to [the] evidence; indeed uncontroverted issues need not be submitted to a jury at all."). Thus, when the evidence conclusively establishes a claim, the claim may be part of the judgment, even if no jury question on the claim was submitted. *See Brown*, 963 S.W.2d at 515.

**B. The Elements of Beach of Contract**

The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.-Houston [1st Dist.] 1995, no pet.).

**C. The Evidence**

According to VR, the "existence of the contract, and the Bank's breach were not in dispute" and therefore the jury was not asked to determine these elements because they were conclusively established. The record shows the evidence of breach of contract was undisputed. The only dispute arose on the issue of whether the Bank could prevail on its defense under section 3.406 of the Business and Commerce Code and the amount of attorney's fees. The record contains a copy of the agreement, which was never disputed by the Bank. Further, the record shows that VR performed its duties under the contract, including those related to reporting a forgery or alteration within 30 days of receiving a statement, and that the Bank agrees that VR satisfied its duties under the contract. The Bank paid an instrument without an authorized signature, in direct contravention of the terms of the agreement. Fedigan, a vice president of the Bank, admitted that the Bank's paying of the altered check was in violation of the agreement. Further, the parties agree that VR suffered liquidated damages in the amount of the check based on the Bank's payment of the check. All elements of breach of contract were proven conclusively in the record. Therefore, the trial court properly did not submit to the jury questions concerning the undisputed elements for breach of contract. *See Brown*, 963 S.W.2d at 515.

We overrule appellant's eighth issue.

### Section 3.406 of the Business and Commerce Code

Because we hold that the evidence conclusively established the elements of breach of contract, we must next address the Bank's contention that section 3.406 of the Business and Commerce Code precludes or reduces VR's recovery.

**A. Applicability of the Business and Commerce Code to Breach of Contract**

Section 3.406 of the Business and Commerce Code applies to a claim for breach of contract when, as here, the claim is based on an agreement concerning negotiable instruments. *See Behring Int'l, Inc.*

*v. Greater Houston Bank,* 662 S.W.2d 642, 652 (Tex.App.-Houston [1st Dist.] 1983, no writ) (stating that section 3.406 applies to breach of contract claim, not comparative negligence defense under common law negligence); *see also Burns & Parks Painting Co. v. Bank One,* No. 05–95–00342–CV, 1996 WL 200947, at *4 (Tex. App.-Dallas Apr.26, 1996, no writ) (mem. op.) (applying section 3.406 to breach of contract claim on depositary agreement); *Weafri Well Servs. Co. v. Fleet Bank,* No. 98 Civ. 888(JSM), 2000 WL 1472724, at *4 (S.D.N.Y. Sept.29, 2000).

## B. The Business and Commerce Code

Section 3.406 provides,

(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

TEX. BUS. & COMM.CODE ANN. § 3.406.

## C. The Bank's Proof of Two Elements Under Section 3.406(a)

As shown above, the Bank must prove that (1) VR failed to exercise ordinary care

that substantially contributed to the alteration of the check and (2) it paid the check in good faith. *See id.* § 3.406(a), (c). Because the Bank presents the matter of good faith in its first appellate issue, we begin with the element of good faith.

### 1. The First Element: The Bank Must Prove it Acted in Good Faith

The Bank's first issue asserts that the "Court erred by disregarding the jury's response to question one." In question one, the jury determined that the Bank met its duty of good faith and fair dealing to VR Electric. The Bank challenges the trial court's ruling that, as a matter of law, the Bank did not act in good faith.

#### a. Standard of Review

 A challenge to a trial court's decision to disregard the jury's finding on an issue is reviewed as a legal sufficiency challenge. *Brown v. Bank of Galveston,* 930 S.W.2d 140, 145 (Tex.App.-Houston [14th Dist.] 1996), *aff'd,* 963 S.W.2d 511 (Tex.1998). In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 807, 822. There is legally insufficient evidence of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

#### b. Jury Question One Concerning Good Faith

Jury Question One states:

Did Bank of Texas, NA, fail to comply with its duty of good faith and fair dealing to VR Electric? "Good faith," means honesty in fact and the observance of reasonable commercial standards of fair dealing. The procedure a bank uses to process checks must reasonably relate to the duty the bank has to detect unauthorized signatures. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage. A bank's failure to adopt any procedures is a failure to act in accordance with reasonable commercial standards.

The jury answered question number one "no," which was in favor of the Bank.

The trial court decided to disregard the jury's answer by determining that the evidence showed as a matter of law that the Bank did not act in good faith.

#### c. Analysis

In their briefs, both the Bank and VR conflate the concepts of good faith and ordinary care. However, the two standards have different meanings. "Good faith," as defined by the Business and Commerce Code, means "honesty in fact and the observance of reasonable commercial standards of fair dealing." TEX. BUS. & COMM.CODE ANN. § 1.201(b)(20) (Vernon 2005). Fair dealing concerns the fairness of the conduct of a party rather than the care with which that party performed an act. *See* U.C.C. § 3–103, cmt. 4 (2007).

On the other hand, "ordinary care" is defined as

the observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this chapter or Chapter 4.

TEX. BUS. & COMM.CODE ANN. § 3.103(a)(9) (Vernon 2005). "Both fair dealing and ordinary care ... are to be judged in the light of reasonable commercial standards, but those standards in each case are directed to different aspects of commercial conduct." U.C.C. § 3–103, cmt. (2007).

There are no Texas cases that give further detail on the meaning of good faith in the context of section 3.406. However, in *Aetna Life & Casualty Co. v. Hampton State Bank,* the Dallas Court of Appeals stated, in deciding a breach of warranty claim under the Business and Commerce Code, that neither "failure to exercise ordinary care [n]or even gross negligence is equivalent to lack of good faith." 497 S.W.2d 80, 87 (Tex.Civ.App.-Dallas 1973, no pet.). In *Aetna,* the court continued that the record "failed to show any lack of honesty in this respect, since it contains no evidence tending to show that [the] employee who handled the transaction connived with the forger or had any reason to believe that the check was not genuine." *Id.* at 88. The case, however, reflects an analysis under the old definition of "good faith," which makes no mention of the objective fair-dealing aspect now required under the Code.[3]

---

3. Other state courts have similar holdings

that acting negligently is not equivalent to

■ We conclude that some evidence supports the jury's finding that the Bank acted in good faith. The check was processed through a widely-used automated system of the Federal Reserve. No evidence was developed at trial suggesting the Bank knew of the forgery or had reason to believe it was not genuine. Testimony by Pennington suggested that she contacted Lou Lawsen, a Bank employee, about the check to see if it had been cashed. However, Pennington did not request a stop-payment order on the check. Nothing in the record suggests she requested any other notation on the check or told the Bank she suspected it would be forged. Rather, Penington stated at trial that her conversation with Lawsen led her to believe the check was simply lost in Viohl's office. Lawsen, the person Pennington contacted at the Bank, was no longer employed at the branch of the Bank where VR did its business, so there is no evidence to suggest that anyone at that branch was aware of any problem with the check prior to Pennington's request to them to see the check after it had been cashed. We hold that the trial court erred by disregarding the jury's finding that the Bank acted in good faith because some evidence supports the jury's verdict. The Bank thus prevailed in establishing the first required element in Section 3.406(a).

We sustain the Bank's first issue.

## 2. The Second Element: The Bank Must Prove VR Failed to Exercise Ordinary Care that Substantially Contributed to Alteration of Check

Having determined that we must uphold the jury's finding that the Bank did not fail to comply with its duty of good faith and fair dealing with VR, our next task is to determine whether the Bank proved that VR failed to exercise ordinary care that substantially contributed to the alteration of the check, because that determination would mean that the Bank met the second required element in Section 3.406(a). *See* Tex. Bus. & Comm.Code Ann. § 3.406(a). In its second, third, fourth and fifth issues, the Bank contends that it cannot be found liable for the check because, in addition to the finding that the Bank acted in good faith, the Bank proved that VR failed to exercise ordinary care that substantially contributed to the alteration of the check by leaving the check unattended and by not issuing a stop payment on the check soon after it was missing.

Here, the jury determined that VR failed to use ordinary care and that failure substantially contributed to the alteration of the check, finding VR 15 percent responsible. VR has not appealed that determination against it by the jury. Accordingly, we must defer to the jury's determination that the Bank proved that VR's negligence substantially contributed to the alteration of the check. Therefore, the Bank prevailed in proving the two elements in section 3.406(a) of the Business and Commerce Code. We sustain the Bank's issues two through five to the extent that they concern the proof of VR's negligence under section 3.406(a).

## D. VR's Proof that the Bank was Negligent Under Section 3.406(b)

■ We have determined that the Bank met its burden under section 3.406(a) to show that it acted in good faith and that VR failed to use ordinary care. Our next task is to determine whether VR proved that the Bank was liable under section

acting in bad faith. The Tennessee Supreme Court has required that to show bad faith, there must be "a knowing or reckless disregard of a customer's rights." *Bank/First Citizens Bank v. Citizens & Associates,* 82 S.W.3d 259, 263–65 (Tenn.2002) (internal quotation marks omitted).

3.406(b). *See* Tex. Bus. & Comm.Code Ann. § 3.406(a), (b). In its sixth issue, the Bank claims that VR "failed to meet its burden of proof under § 3.406(b)." *See id.* § 3.406(b). The Bank states that VR "did not elicit any evidence about general banking usage of automatically processed checks" and that without that evidence, "there was no basis for the jury to conclude, given [VR's] burden of proof under question two, that [the Bank] failed to exercise ordinary care." The Bank claims there was no basis for the jury to find 15 percent liability against it. The Bank maintains that no case law under the revised Uniform Code supports the proposition that a bank fails to "exercise ordinary care in processing a check by automated means." The Bank concludes, "Accordingly, the Court of Appeals should disregard the finding by the jury that [the Bank] was contributorily negligent under Question Two."

**1. Jury Question Two Concerning Negligence**

Question two states:

Did the negligence, if any, of those named below substantially contribute to the occurrence in question? With respect to the conduct of VR Electric, consider only that conduct which contributed to the alteration of the check, or to the making of a forged signature on the check. With respect to the conduct of Bank of Texas, NA, and Frank C. Mata d/b/a/ Tex Car Motors, consider only that conduct in paying the check or taking the check.

The jury answered question number two against the Bank, as well as against VR and Mata. The jury charge also included instructions that defined certain terms. The charge says, "Negligence" means "failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." The charge tracks the statutory language defining "ordinary care" by stating, "In the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." *See* Tex. Bus. & Comm.Code Ann. § 3.103(a)(9) (Vernon 2005). The charge further tracks statutory language, stating, "In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage." *See id.* The jury charge specifically instructs that "a bank may not require a customer to execute a stop payment order." Furthermore, the jury is told that the definition of "substantially contributes" is "conduct which is a contributing cause and a substantial factor in bringing about the alteration of the check, or to the making of a forged signature on the check, with respect to VR Electric, or to the paying of the check, or the taking of the check with respect to the Bank of Texas, NA, or Frank C. Mata d/b/a Tex Car Motors."

**2. Applicable Law**

As stated above, in determining whether the court erred by denying a motion to disregard jury findings, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 822.

### 3. Analysis

The Bank claims in its motion for rehearing that it "conclusively establishes that the Bank of Texas met the commercial standards in § 3.103(a)(9)." But the evidence shows the Bank did not use ordinary care, as that term is defined in the charge, which tracks the statutory language in section 3.103(a)(9). *See* Tex. Bus. & Comm.Code Ann. § 3.103(a)(9) (Vernon 2005). Section 3.103(a)(9) provides that reasonable commercial standards do not require the Bank to examine the instrument paid by automated means if two prongs are met: (1) the failure to examine must not violate the bank's prescribed procedures and (2) the bank's procedures must not vary unreasonably from general banking usage. *See id.* Viewing the evidence in a light favorable to the jury's verdict, the first prong is not met, and therefore the Bank is not excused from examining the instrument. *See id.; City of Keller*, 168 S.W.3d at 822. There were no written procedures concerning when the signature of a check should be manually verified. The Bank claimed to have verbal policies concerning when the signature of a check should be manually verified, but Fedigan testified she was unsure what the verbal policy was. Conflicting testimony was given by Bank employees regarding whether the policy was to review checks over $100,000 or over $250,000. However, Fedigan testified that the average amount of checks processed during the time VR's forged check was processed was just over $1000. Based on the lack of a written policy and the inconsistency in the description of the verbal policy, the jury could rationally determine that the Bank did not have prescribed procedures for examining checks and therefore the evidence did not establish the first prong under section 3.103(a)(9), which requires proof that the failure to examine does not violate the bank's pre-scribed procedures. *See* Tex. Bus. & Comm. Code Ann. § 3.103(a)(9). Since the evidence is legally sufficient to show that the Bank did not meet the first prong of section 3.103(a)(9), we do not reach the second prong that asks whether the Bank's procedures varied unreasonably from general banking usage, because both prongs must be proven for the Bank not to be required to examine the instrument paid by automated means. *See id.*

In this appeal, the Bank maintains that the evidence is legally insufficient to show that VR proved that the Bank failed to exercise ordinary care. The Bank focuses on the portion of the definition of ordinary care that refers to "the observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." The Bank contends VR did not introduce evidence of reasonable commercial standards prevailing in the area. As noted above, VR introduced evidence that the Bank had no written policy and only an unclear, inconsistent, verbal policy to review signatures. This evidence, viewed in a light favorable to the jury's verdict, is sufficient to uphold the jury's finding that the Bank did not exercise ordinary care. *See McDowell v. Dallas Teachers Credit Union*, 772 S.W.2d 183, 193 (Tex.App.-Dallas 1989, no pet.).

In *McDowell v. Dallas Teachers Credit Union*, the court held that the credit union was liable for the amounts paid on forged share drafts because the evidence established, as a matter of law, that the credit union failed to use ordinary care in its treatment of the forged share drafts. *Id.* The evidence showed the credit union did not have any procedure for verifying the depositor's signature on any of the share drafts that were paid. *Id. McDowell* applied former sections 3.401, 3.1418, and 4.401 of the Texas Business and Com-

merce Code. *Id.* (citing TEX. BUS. & COM. CODE ANN. §§ 3.401, 3.418, 4.401 (Vernon 1968)). Then section 4.406 placed a duty on a depositor to promptly examine his bank statement and report to the bank the discovery of any unauthorized signature or any alteration. *Id.* If the depositor failed to comply with this duty, the bank was protected from loss so long as it exercised ordinary care and paid the item in good faith. *Id.* The court held that, as a matter of law, the credit union's failure to establish any process to signature-verify any share drafts was unreasonable, arbitrary, and unfair. *Id.* The *McDowell* court stated, "If the procedure does not reasonably relate to the bank's duty to verify signatures, the procedure can not be considered an exercise of ordinary care or an act in accordance with reasonable commercial standards." *Id.*

Although *McDowell* involved an earlier version of the code, it is similar to the present code's section 3.103(a)(9) in that both codes examine whether the bank used ordinary care in handling the check or share, and it is therefore instructive to our analysis. *Id.* We conclude the Bank's failure to have a written policy and to have only an unclear, inconsistent, verbal policy to review signatures is some evidence of a failure to exercise ordinary care. *See id.* We hold the evidence is legally sufficient to uphold the jury's finding that the Bank failed to exercise ordinary care.

We overrule the Bank's sixth issue.

In summary, we uphold the jury's determination that the Bank met the evidentiary requirements in 3.406(a) and VR met the evidentiary requirements in 3.406(b). *See* TEX. BUS. & COMM.CODE ANN. § 3.406(a), (b). The consequence of this determination is that "the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss." *See id.*

### E. Apportionment of Damages

In its seventh issue, the Bank asserts the trial court incorrectly aggregated damages and attorney's fees to the Bank and Mata.[4] Specifically, the Bank contends (1) that Chapter 33 of the Texas Civil Practice and Remedies Code applies to this case and (2) that, under that chapter, the trial court could not aggregate the Bank's 15% liability with Mata's 70% in assessing damages against Bank of Texas. We disagree with the Bank's assertion that Chapter 33 of the Civil Practice and Remedies Code applies to this case.

Chapter 33 governs only tort claims, and this case involves a breach of contract claim against the Bank. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.002 (Vernon 2005). Although it made no objection or exception to VR's characterization of this claim as a breach of contract claim in its pleading, the Bank, in its brief, refers to VR's claim as a "tort related" claim. However, even if we were to characterize VR's claim as a tort claim against the Bank, Chapter 33 would not apply because Article 3 of the UCC (as codified in the Texas Business and Commerce Code) was recently revised to create a discrete fault scheme, specifically allocating responsibility among parties to a banking relationship. *See* TEX. BUS. & COMM.CODE ANN. § 3.406; *see also Sw. Bank v. Info. Support Concepts, Inc.,* 149 S.W.3d 104, 107 (Tex.2004) (holding that fault of third-party defendants cannot be considered in UCC conversion actions

4. We do not address the issue of whether Mata was properly included as a responsible third-party under section 3.406 because nei-ther party makes such a challenge on appeal nor did either party challenge his inclusion in the charge.

under section 3.420 of Texas Business and Commerce Code). "Applying Chapter 33's proportionate responsibility framework to claims involving Revised Article 3, therefore, could disrupt the UCC's carefully allocated liability scheme." *Sw. Bank*, 149 S.W.3d at 108. Both parties agree that section 3.406 of the Business and Commerce Code governs the present case. To the extent any proportionate responsibility provisions apply to VR's breach of contract claim against the Bank, it is section 3.406 that applies, not the general statute in Chapter 33. *Id.*

 We do not reach the issue of whether the damages were properly apportioned under section 3.406 or whether the trial court properly found the Bank jointly and severally liable with Mata under section 3.406 because the Bank makes no challenge to the aggregation of liability under that section. Nowhere in its brief does the Bank request a reduction of damages under section 3.406. Rather, the Bank asks only that this Court enter a take-nothing judgment in its favor. Based on our above holding that the evidence was sufficient to support the jury's findings, the Bank is not entitled to a take-nothing judgment in its favor under section 3.406. *See* TEX. BUS. & COMM.CODE ANN. § 3.406(b). Furthermore, the Bank has not challenged the apportionment of damages under section 3.406, and consequently we do not address that matter. *See id.; see also* TEX.R.APP. P. 38.1(e). Therefore, we must uphold the trial court's determination under the proportionate responsibility framework of section 3.406 because the Business and Commerce Code undisputedly applies to this case, and no challenge to the alloca-

tion of damages under the Code is presented to us in this appeal.

We overrule the Bank's seventh issue.

### The Amount of Attorney's Fees

In its ninth issue, the Bank asserts that the award of attorney's fees was unreasonable because they were excessive with respect to the amount in controversy.[5]

In *USAA County Mut. Ins. Co. v. Cook*, this Court stated,

Factors that a factfinder should consider when determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04). Attorney's fees must bear some reasonable relationship to the amount in controversy. *Cordova v. Southwestern Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 448 (Tex.App.-El Paso 2004, no pet.). But, the amount of damages awarded is

---

5. The Bank does not challenge the appropriateness of attorney's fees in a breach of con-

tract claim governed by section 3.406.

only one factor in determining the reasonableness of a fee award. *Id.*

241 S.W.3d 93, 102–03 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In the present case, the Bank challenges only the amount of attorney's fees in relation to the amount in controversy, which is only one of several factors to be considered. However, we address the evidence presented in light of each of the factors.

### 1. Time and Labor Required, Novelty and Difficulty of Questions Involved, and Skill Required to Perform Legal Service Properly

At trial, Douglas Sandvig, VR's attorney testified about his legal services. He provided invoices for many of the services provided to VR, as well as a summary of the fees and expenses billed to VR, which reflected that he spent roughly 84 hours on the case. The Bank does not challenge the evidence presented under this factor.

### 2. Likelihood that the Acceptance of Employment Will Preclude Other Employment by the Lawyer

No evidence admitted at trial addressed this factor.

### 3. Fee Customarily Charged for Similar Legal Services

Sandvig testified that his hourly fee of $250 was common in the industry and in line with what is charged locally for such services. The Bank agreed with this assertion and does not challenge the reasonableness of the hourly rate charged.

### 4. Amount Involved and Results Obtained

The present case involves a loss of $8,276 to VR and the amount awarded for attorney's fees is about four times that amount, including provisions for appeal to this Court and to the Texas Supreme Court.

### 5. Time Limitations Imposed by Client or by Circumstances

No evidence admitted at trial addressed this factor.

### 6. Nature and Length of Professional Relationship with Client

No evidence admitted at trial addressed this factor.

### 7. Experience, Reputation, and Ability of Lawyers

Sandvig admitted that he did not specialize in the area of law at issue in the present case. However, he did state that he has 25 years of experience as a practicing attorney, is Board certified as a civil trial attorney, and has handled cases involving forged instruments previously. VR presented no evidence disputing this.

### 8. Whether Fee is Fixed or Contingent, or Uncertainty of Collection Before Legal Services Rendered

The evidence presented at trial showed that Sandvig was paid a fixed rate of $250 per hour, on an hourly basis. Sandvig testified that VR paid all invoices he had issued them.

▮ Although the Bank contends that the amount of attorney's fees awarded is excessive, it presented no evidence that a rate of $250 per hour for a Houston attorney is unreasonable or that the amount of time dedicated to the case was unreasonable. Given the amount of time invested in the case by VR's attorney, charged at a reasonable rate for this area for an attorney with the experience of Sandvig, the attorney's fees awarded are not excessive or unreasonable. Accordingly, we hold that the evidence is sufficient to support the jury's award of trial and appellate attorney's fees.

We overrule appellant's ninth issue.

### VR's Cross–Appeal

In its sole issue in its cross-appeal, VR asserts that the trial court erred by "allowing a partial affirmative defense of negligence after ruling that the bank failed to act in good faith as a matter of law." In light of our above holding that the Bank did act in good faith, we overrule VR's issue on cross-appeal as moot.

### Conclusion

We conclude that the trial court erred by disregarding the jury's finding that Bank of Texas failed to act in good faith. The trial court's error does not merit a take-nothing judgment, which is the only relief sought by the Bank on appeal. We affirm the judgment of the trial court.