Opinion issued July 29, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00322-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ALLSTAR NATIONAL INSURANCE AGENCY, Appellant

 

V.

 

JOHNICALA JOHNSON, INDIVIDUALLY AND AS SKYPOT COMPUTERS
USA, INC., Appellee

 

 



On Appeal from the County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 915181

 

 



MEMORANDUM OPINION

          Allstar
National Insurance Agency (“Allstar”) purchased three custom-built computers
from Johnicala Johnson, owner of Skypot Computers USA, Inc. (collectively,
“Johnson”).  Allstar sued Johnson for
breach of contract and violation of the Deceptive Trade Practices Act, claiming
that Johnson failed to deliver the computers or refund the purchase price.  After a bench trial, the trial court
determined that Allstar did not prove its claims by a preponderance of the
evidence and rendered a take-nothing judgment in favor of Johnson.

On appeal, Allstar contends
that:  (1) the trial court was
partial to Johnson, who acted pro se, by assisting him during the bench trial;
(2) the trial court erroneously admitted Johnson’s invoice of the transaction;
and (3) the verdict was against the great weight and preponderance of the
evidence.  Finding no error, we affirm.

Background

In October 2007, Allstar
representative David Ubak-Offiong (“Ubak”) visited Johnson’s office to discuss
the purchase of three custom-built computers. 
Ubak tendered a check for $9,500.76, dated October 27, 2007, but he
alleges that he never received the computers. 
After receiving no response to its DTPA notice letter requesting either
the computers or a refund of the purchase price, Allstar sued Johnson.

At the bench trial, Ubak testified
that he wrote Johnson a check when he visited his office “on October 27.”  According to Ubak, although he had been in
Johnson’s store and bought things from him before, he had never discussed
purchasing computers from Johnson before October 27.  Ubak testified that he did not receive a
receipt at the time he wrote the check and he never received the computers he
ordered.

Johnson testified differently.  He stated that, usually, when customers
purchase computers or software from him, they take the item with them at the
time of purchase.  According to Johnson,
Ubak came to the office two or three times to inquire about purchasing
computers for a possible internet café in Nigeria, and after he and Johnson
reached an agreement on system specifications, Ubak paid for and picked up the
computers on October 10.  Johnson’s
invoice, dated October 10, reflects that Allstar purchased three computer
systems, three computer monitors, three sets of computer hardware, and three
sets of computer software for $9,774.33. 
Allstar’s original petition and its DTPA notice letter, admitted into
evidence at trial, both state that Ubak visited Johnson’s office to purchase
the computers on October 10, 2007.

On direct examination, Allstar’s
counsel asked Johnson about the type of computers that he sold Allstar and he
consulted his invoice from the transaction. 
The trial court asked whether Johnson wished to introduce the invoice as
an exhibit and whether Allstar had any objections.  Allstar objected on hearsay grounds because
Johnson had not attached a business records affidavit to the invoice, nor had
he laid the proper predicate to introduce the invoice under the business
records exception.  Allstar’s counsel
then asked Johnson questions about the transaction based on the invoice,
including questions about the system specifications, amount of the purchase,
the date listed on the invoice, and the date stated on Ubak’s check.  After Allstar’s counsel had an exchange with
the trial court, he agreed to introduce the invoice.  Later in the trial, the trial judge orally reviewed
which exhibits she had admitted:  (1) the
check written by Ubak, (2) Allstar’s DTPA notice letter, and (3) Johnson’s
invoice.  Allstar argued that the trial
court did not agree to admit the invoice. 
The trial judge stated that she “admitted it because [counsel] talked to
[Johnson] about it.”  Allstar’s counsel
agreed that he had asked Johnson a question about the invoice.

          During
the bench trial, the trial court interjected on occasion, stating that:  (1) Johnson’s practice of giving a customer
an invoice on the date of purchase and Johnson’s sale price of $2499 per
computer was “asked and answered;” (2) Johnson’s awareness that if Allstar won,
the amount stated in its DTPA notice letter would be tripled, was not a fair
statement of the law; (3) Johnson’s contention that Ubak asked him to launder
money to Nigeria was not relevant; and (4) settlement negotiations between the
parties within the Nigerian community were not relevant.  The trial court also responded to Allstar’s
objection regarding a picture of computers displayed in Johnson’s store by stating
that Johnson was not attempting to introduce the picture, but was instead just
using the picture for demonstrative purposes.

          At
the close of the trial, the trial court stated that the case involved a
“swearing match between two people.” 
According to the trial court, the evidence consisted of:  (1) Johnson’s invoice for the computers; (2)
Allstar’s check in an amount “close to that invoice amount;” (3) Johnson’s
testimony that he gave Allstar the computers; and (4) Ubak’s testimony that
Allstar never received the computers. 
The trial court ruled that Allstar had not proved its case by the
greater weight of the evidence and rendered a take-nothing judgment in favor of
Johnson.

Discussion

Partiality of Trial Judge

          A
trial judge should be fair and impartial and not act as an advocate for any
party, nor should the judge be any party’s adversary.  Metzger
v. Sebek, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ
denied) (citing Delaporte v. Preston
Square, Inc., 680 S.W.2d 561, 563 (Tex. App.—Dallas 1984, writ ref’d n.r.e.);
Ex parte Finn, 615 S.W.2d 293, 296
(Tex. Civ. App.—Dallas 1981, no writ)). 
To reverse a trial court’s judgment on the basis of judicial partiality,
we must find both (1) judicial impropriety, and (2) probable
prejudice to the complaining party. 
Bott v. Bott, 962 S.W.2d 626,
631 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citing Pitt v. Bradford Farms, 843 S.W.2d 705, 706–07 (Tex. App.—Corpus
Christi 1992, no writ)); see also Tex. R. App. P. 44.1(a) (stating that
appellant must demonstrate that error probably caused rendition of an improper
judgment).

          A
trial judge is responsible for the “general conduct and management of the
trial” and may properly intervene in the proceedings to “maintain control and
promote expedition.”  Metzger, 892 S.W.2d at 38; see also Dow Chem. Co. v. Francis, 46
S.W.3d 237, 240 (Tex. 2001) (per curiam) (“In short, a trial court has the
inherent power to control the disposition of cases ‘with economy of time and
effort for itself, for counsel, and for litigants.’” (quoting Landis v. N. Am. Co., 299 U.S. 248, 254,
57 S. Ct. 163, 166 (1936))).  The Texas
Rules of Evidence further grant a trial judge “reasonable control over the mode
and order of interrogating witnesses and presenting evidence so as to (1) make
the interrogation and presentation effective for the ascertainment of the
truth, [and] (2) avoid needless consumption of time . . . .”  Tex.
R. Evid. 611(a).  Furthermore, only in rare circumstances are
judicial rulings “demonstrative of the degree of favoritism or antagonism
required to show that a fair and impartial trial is impossible.  Such rulings are generally best brought as
grounds for appeal, not as evidence of judicial bias.”  Markowitz
v. Markowitz, 118 S.W.3d 82, 87 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied); Francis, 46 S.W.3d at 240
(quoting Liteky v. United States, 510
U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)).

          Allstar
contends that the trial court was partial in favor of Johnson because it (1) interceded
during questioning on five occasions, (2) admitted Johnson’s invoice without a
request to admit the evidence,[1] and
(3) responded to Allstar’s objection to a picture of the inventory in
Johnson’s store by stating that Johnson was not attempting to introduce the
picture into evidence, but was instead using the picture solely for
demonstrative purposes.  Each time the
trial court interjected, it was in the exercise of its discretion to maintain
control over and expedite the trial proceedings, particularly in a case tried
to the bench.  See Metzger, 892 S.W.2d at 38.  We find no evidence of judicial impropriety
on this record.  Further, Allstar fails
to demonstrate on appeal how the trial court’s actions, in this bench trial,
probably caused it prejudice.  See id.; Tex. R. App. P.
44.1(a).

Admission of Evidence

          Allstar
next contends that the trial court erred in admitting Johnson’s invoice of the
transaction because Johnson never offered the invoice for admission and Johnson
did not establish the predicate for admitting a business record.  We review a trial court’s decision to admit
or exclude evidence for an abuse of discretion. 
Bay Area Healthcare Group, Ltd. v.
McShane, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam); In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005) (citing State v. Bristol Hotel Asset Co., 65
S.W.3d 638, 647 (Tex. 2001)).  To
preserve error for appellate review, the party must timely object at trial and
state the grounds for the objection with sufficient specificity to make the
trial court aware of the complaint, unless the specific grounds are apparent
from the context.  Tex. R. App. P. 33.1(a)(1)(A); see also Tex. R. Evid. 103(a)(1).  The complaining party waives error in the
admission of evidence if it allows the evidence to be introduced during the
trial without objection.  McShane, 239 S.W.3d at
235; Volkswagen of Am., Inc. v. Ramirez,
159 S.W.3d 897, 907 (Tex. 2004).

          At
trial, the trial court asked whether Johnson wanted to introduce the invoice as
an exhibit and Johnson replied in the affirmative.  Allstar objected on the grounds that Johnson
did not attach a business records affidavit to the invoice.  See
Tex. R. Evid. 803(6);
id. 902(10).  The trial court did not rule on the
admissibility of the invoice.  Allstar then
asked Johnson about the items Johnson sold to Allstar, the price, his procedure
of handling sales, and the check Ubak wrote to Johnson.  After asking about the invoice, Allstar’s
counsel and the trial court had the following exchange:

The Court:  [B]ut
if you objected to [the invoice], then how are you going to use it?

 

Allstar:       I’m
not going to use it.

 

The Court:  You
just asked him about it.  So are you not
adopting it?

 

Allstar:       No,
I’m not adopting it.

 

The Court:  Then
don’t ask him about it.

 

. . . .

 

The Court:  You
can’t have it both ways, Counsel.  If
you’re objecting to its entry, you can’t use it against him.  If he wants to introduce it, if you want to
let him introduce it, then I don’t know why you wouldn’t want to let him
introduce an invoice.  And you can ask
away, but that’s your choice.

 

Allstar:       Let
him introduce it.

 

The Court:  Then
let’s introduce [the invoice] as Defendant’s Exhibit 1, and we’ve got [the
check as] Plaintiff’s Exhibit 1, I take it?

 

Allstar did not renew its hearsay objection
to the invoice during its discussion with the trial court regarding the
admission of the invoice.  Furthermore,
Johnson testified to all of the information contained in the invoice at various
points throughout the trial without objection from Allstar.  See
McShane, 239 S.W.3d at 235; Ramirez, 159 S.W.3d at 907.  Because
Allstar ultimately allowed the introduction and admission of the invoice
without objection, we hold that Allstar failed to preserve its complaint that
the trial court erroneously admitted the invoice.

Factual Sufficiency

          Finally,
Allstar contends that the trial court’s determination that Johnson did not
breach the contract and violate the DTPA is against the great weight and
preponderance of the evidence.[2]  When reviewing a trial court’s factual
determinations after a bench trial, we use the same factual sufficiency standard
that applies to jury verdicts.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996).  When
a party challenges an adverse finding on which it had the burden of proof at
trial, the party must demonstrate that the trial court’s finding is against the
great weight and preponderance of the evidence. 
Francis, 46
S.W.3d at 242; Grider v. Mike O’Brien,
P.C., 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  We must consider all of the evidence in a neutral
light, and we set aside the verdict only if the evidence is so weak or if the
finding is so against the great weight and preponderance of the evidence such
that it is clearly wrong and unjust.  See Francis, 46 S.W.3d
at 242.  In a bench trial, the trial
court judges the credibility of the witnesses, determines the weight of
testimony, and resolves conflicts and inconsistencies in the testimony.  See Sw. Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex.
App.—Houston [1st Dist.] 1992, writ denied); Monroe v. Alternatives in Motion, 234 S.W.3d 56, 66 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). 
As long as the evidence falls “within [the] zone of reasonable
disagreement,” we will not substitute our judgment for that of the
fact-finder.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).

A.   
Breach of Contract

To establish a breach of contract,
the plaintiff must demonstrate: 
(1) the existence of a valid contract; (2) the plaintiff performed
or tendered performance; (3) the defendant breached the contract; and (4) the
plaintiff was damaged as a result of the breach.  Bank of Tex. v. VR Elec., Inc., 276 S.W.3d 671, 677 (Tex.
App.—Houston [1st Dist.] 2008, pet. denied).

Ubak testified that he first visited
Johnson’s office to discuss the purchase of computers on October 27, 2007, and
he did not discuss the possible transaction with Johnson before this date.  According to Ubak, he wrote Johnson a check
for $9,500.76 on October 27, but Allstar never received the three computer
systems that it ordered.  Ubak further
testified that he did not see Johnson’s invoice for the purchase until Allstar’s
attorney showed it to him—Johnson did not give him a receipt or invoice at the
time of the purchase.

Johnson testified that Ubak visited
his office several times to discuss purchasing computers, and he finally agreed
to purchase three custom-built computers, with accompanying hardware and
software, on October 10, 2007.  The trial
court admitted an invoice for the purchase, in the amount of $9,774.33, dated
October 10.  The trial court also
admitted the DTPA notice letter that Allstar sent to Johnson, which stated that
“[o]n October 10, 2007, Mr. Udoh David Ubak-Offiong stopped by your business to
purchase some computers and miscellaneous office supplies.”  Johnson described the procedure he uses when
a customer purchases goods from him:  the
customer pays and receives the goods, and Johnson simultaneously issues an
invoice noting the date of purchase. 
Johnson testified that Ubak paid for the computers and took the computers
with him when he left Johnson’s office on October 10.

Allstar points out two
inconsistencies in the evidence:  (1)
Johnson testified that Ubak picked up the computers on the same day that he
paid for the computers, but the invoice reflected a transaction date of October
10 and Allstar’s check had a date of October 27; and (2) Allstar’s check was in
the amount of $9,500.76 while the invoice listed a price of $9,774.33.  According to Allstar, these discrepancies
suggest that Johnson’s invoice was “clearly defective and fraudulent.”  Johnson testified that Ubak asked for a
discount on the transaction and Johnson gave him “a discount on the computers
about $200 difference.”  The invoice
amount is $274 higher than the check written by Ubak.  The trial court, as the fact-finder in a
bench trial, judges the credibility of the witnesses, assigns the weight to be
given their testimony, and resolves all conflicts and inconsistencies in the
evidence.  See Sw. Bell Media, 825 S.W.2d at 493.  Because the evidence falls “within [the] zone
of reasonable disagreement,” we will not substitute our judgment for that of
the trial court.  City of Keller, 168 S.W.3d at 822.  We hold that the trial court’s finding that
Johnson did not breach the contract with Allstar is not against the great
weight and preponderance of the evidence.

B.   
DTPA Violation

Allstar also contends that the trial
court erred by finding that Johnson did not violate the DTPA because Allstar
presented legally and factually evidence that Johnson “committed the act or
omission in violation of the DTPA that was the producing cause of damages to
Allstar.”  To prevail on a DTPA claim
based on a laundry list violation, a plaintiff must establish that the (1)
defendant used or employed a false, misleading or deceptive act or practice
specifically enumerated in the laundry list; (2) the consumer detrimentally
relied on this act or practice; and (3) the violation was a producing cause of
economic or mental anguish damages.  See Tex.
Bus. & Com. Code Ann.
§ 17.50(a) (Vernon Supp. 2009).  According to Allstar, Johnson violated
section 17.46(b)(7) of the DTPA, which prohibits a
defendant from “representing that goods or services are of a particular
standard, quality, or grade, or that goods are of a particular style or model,
if they are of another.”  See Tex.
Bus. & Com. Code Ann. § 17.46(b)(7).

A defendant does not violate section
17.46(b)(7) by failing to deliver goods unless the
alleged harm arises from a misrepresentation regarding failure to deliver, as
opposed to the failure to deliver itself. 
See Tony Gullo Motors I, L.P. v.
Chapa, 212 S.W.3d 299, 304 (Tex. 2006) (“An allegation of mere breach of
contract, without more, does not constitute a ‘false, misleading, or deceptive
act’ in violation of the DTPA.”); see also
Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14–15 (Tex. 1996) (holding that failure
to perform contractual obligations, rather than statements promising to perform,
caused harm “and that injury is governed by contract law, not the DTPA”); Holloway v. Dannenmaier, 581 S.W.2d 765,
767 (Tex. Civ. App.—Fort Worth 1979, writ dism’d) (noting that “mere failure to
later perform a promise does not constitute misrepresentation” within the
meaning of the DTPA).

Allstar presented no evidence that
Johnson made misrepresentations about delivering the computers to induce Ubak
into purchasing the computers.  See Howell Crude Oil Co. v. Donna Ref.
Partners, Ltd., 928 S.W.2d 100, 108–09 (Tex. App.—Houston [14th Dist.]
1996, writ denied) (holding that recovery under DTPA available when
misrepresentations themselves caused harm by inducing plaintiff to enter into
agreement that was later breached).  It
only presented evidence that Johnson breached the contract by failing to
deliver the computers.  Because Johnson’s
alleged failure to perform his contractual obligations does not constitute a
misrepresentation under the DTPA, we hold that the trial court’s determination
that Johnson did not violate the DTPA was not against the great weight and
preponderance of the evidence.  See Chapa, 212 S.W.3d at
304; Crawford, 917 S.W.2d at
14–15.




Conclusion

We affirm the judgment of the trial
court.

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Sharp.











[1] After Johnson first referred to his invoice, the
trial court asked him whether he wanted to introduce the invoice into evidence
and Johnson replied in the affirmative. 
We address the propriety of the trial court’s decision to admit the
invoice below.

 





[2] Allstar separately contends that the trial court
erred by finding that Johnson did not breach the contract or violate the DTPA
because it presented legally and factually sufficient evidence to support its
claims.  We construe this contention as a
claim that the verdict was against the great weight and preponderance of the
evidence.