FILED IN
1st COURT OF APPEALS
HOUSTON, TX
March 9, 2015
CHRISTOPHER A. PRINE,
CLERK

NO. 01-13-00347-CV

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS

KILGORE EXPLORATION INC.,
Appellant.

v.

APACHE CORPORATION,
Appellee.

Appeal From Cause No. 2010-20264
In the 333rd Judicial District Court of Harris County, Texas

APPELLANT'S MOTION
FOR EN BANC RECONSIDERATION

**DOYLE, RESTREPO, HARVIN
& ROBBINS, L.L.P**.
Kathleen Cynthia Pickett
State Bar No. 15980500
*cpickett@drhrlaw.com*
N. Kimberly Hoesl
State Bar No. 24040540
*khoesl@drhrlaw.com*

440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 (Tel.)
(713) 228-6138 (Fax)

*Attorneys for Appellant,
Kilgore Exploration Inc*.

**March 9, 2015**

Pursuant to Texas Rule of Appellate Procedure 49.7, Appellant Kilgore Exploration, Inc. ("Kilgore") files this Motion for En Banc Reconsideration, and respectfully requests that this Court correct its judgment issued February 5, 2015 (Exhibit 1), in which it affirmed the trial court's entry of judgment for Appellee Apache Corporation ("Apache"), and would show the following:

1.     Kilgore filed this appeal after the trial court erred in denying Kilgore's motion for judgment notwithstanding the verdict despite the fact that (1) the trial court granted judgment on a contract claim which Apache never pleaded and (2) Apache waived its sole cause of action by failing to obtain jury findings on any element of it.

2.     As to the first argument, Apache brought the underlying suit for Kilgore's alleged failure to pay certain "JIBs," but the only contract at issue, the Participation Agreement, did not contain any obligation to pay "JIBs." (CR 821-30).  A judgment must be supported by both the pleadings and the evidence.  *See* TEX. R. CIV. P. 301.  Apache never amended its pleading to assert a cause of action for failure to pay amounts due under the Participation Agreement, the only agreement at issue.  (CR 1650-51).

3.     The second argument is similarly based on a clear disconnect between the pleadings and the trial.  It was Apache's burden, as plaintiff, to obtain a finding on each element of its breach of contract cause of action.  *See Ford Motor Co. v.*

*Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) ("There can be no question that it was [the plaintiff's] burden to obtain affirmative answers to jury questions as to the necessary elements of his cause of action."). But here, there was no finding as to those elements, especially the first element, the existence of a valid agreement. *See Crowder v. Scheirman*, 186 S.W.3d 116, 118 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (listing elements of a contract claim). Specifically, Kilgore disputed the *very existence* of any agreement that would obligate it to pay the disputed charges. (CR 1042-51, at 1048-49) (CR 58-244, at 64-65, 70) (CR 991-96). In fact, Kilgore's argument throughout the litigation that there was never an agreement, or a meeting of the minds, to pay the disputed charges was never controverted. *See e.g.*, *Hallmark v. Hand*, 885 S.W.2d 471, 477 (Tex. App.—El Paso 1994, writ denied) (affirming jury's verdict that no valid contract existed when evidence confirmed that defendant never intended to bind himself to the terms of the proposal).

4.      Thus, Kilgore raised a question of contract *formation*. The issue of whether an agreement was formed, *i.e.*, whether there was a meeting of the minds, is an issue of fact for the jury to decide. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Franco v. Ysleta Indep. Sch. Dist.*, 346 S.W.3d 605, 608 (Tex. App.—El Paso 2009, no pet.) ("When the 'meeting of the minds' element is contested, it is a

question for the fact finder."); *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Whether the parties reached an agreement is a question of fact."); *Live Oak Ins. Agency v. Shoemake*, 115 S.W.3d 215, 218 (Tex. App.—Corpus Christi 2003, no pet.) ("where the existence of the agreement is disputed, the question of whether an agreement was reached by the parties is generally a question of fact"). The trial court did not rule on this fact issues, and Apache failed to submit this fact issue to the jury. Apache thereby waived it. *See, e.g.*, *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991); *Kittyhawk Landing Apartments III v. Anglin Constr. Co.*, 737 S.W.2d 90, 93-94 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

5. In its February 5, 2015 judgment, however, the Court did not address the issue of contract formation at all. Instead, the opinion is grounded in the language of contract construction even though that was not the argument on appeal. Moreover, the judgment posits that because there was a valid agreement *of some sort* between the parties, *i.e.*, the Participation Agreement, Apache met its burden of proving the first element for breach of contract. But that is not Texas law, especially when the question of contract formation has been raised.

6. The mere existence of the Participation Agreement is not sufficient to satisfy the first element of a contract claim. Apache had to prove that there was a

valid agreement *containing* the obligation it claimed had been breached. *See Villarreal v. Art Inst. of Houston, Inc.*, 20 S.W.3d 792, 797 (Tex. App.—Corpus Christi 2000, no pet.) ("Thus, because she has not proven the existence of a valid contract containing the terms upon which she bases her suit, the trial court was correct in directing verdict against Villarreal on her breach of contract claims"). The only agreement at issue, the Participation Agreement, did not contain that obligation. Therefore, Apache failed to prove the existence of a contract obligating Kilgore to pay these disputed charges, and it failed to obtain any finding to that effect. Accordingly, it cannot prevail on its breach of contract claim.

7. There is no amount of construction that can create an agreement that does not exist. Even Apache's own witnesses admitted that the disputed charges were not, and were never intended to be, part of the Final AFE which solely defined Kilgore's payment obligation.[1] (5 RR 20-23) (5 RR 53-54) (5 RR 63-64, "We don't ever include trouble costs or any weather-related costs in our AFE's."). Because the evidence was uncontroverted that the Final AFE did not include the disputed charges, Kilgore could not have breached the Participation Agreement in connection with those charges:

---

[1] The Participation Agreement contains an agreement that Kilgore would pay its proportionate share of specifically-defined expenses. Those expenses were defined by the Final AFE. (CR 821-30, at 822) ("Execution of said preliminary AFE represents a binding obligation to participate in the drilling of the Required Well *on the basis of the Final AFE* (as defined in Section 3 below)".) (emphasis added).

> Because the contracts unambiguously do not impose an obligation on Versado to compensate Apache for "unaccounted-for" gas that was not sold at the plant tailgate, contract damages for gas lost between the wellhead and the tailgate are not recoverable. Apache's breach-of-contract claim fails as a matter of law.

*Dynegy Midstream Serv. L.P. v. Apache Corp.*, 294 S.W.3d 164, 170 (Tex. 2009).

8. Apache sued Kilgore for breach of contract for failing to pay JIBs. But Apache did not prove or obtain a finding that there was a contract obligating the payment of JIBs. The trial court entered a final judgment that Kilgore breached a contract by not paying the disputed charges. But Apache did not prove or obtain a finding that there was a contract obligating Kilgore to pay those charges in the first place.

9. Nonetheless, the two-justices panel[2] affirmed the final judgment, holding that because Kilgore had agreed to pay one thing, it was somehow bound to pay whatever additional charges Apache wanted, even when Apache admitted that those charges were never part of the only valid agreement in the first place. This is not Texas law. In reaching this strained conclusion, the panel completely ignored the contract formation argument that was the primary basis of Kilgore's appeal. Therefore, Kilgore files this motion, praying that the entire Court

---

[2] The third member of the panel did not participate in the February 5, 2015 judgment because his term ended on December 31, 2014. Rather than appoint a third justice, the remaining two justices issued the judgment.

6

reconsider Kilgore's appeal en banc and reconsider the formation arguments Kilgore raised in its original briefing.

Respectfully submitted,

**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**

By:\_ /s/ N. Kimberly Hoesl_____
Kathleen Cynthia Pickett
State Bar No. 15980500
cpickett@drhrlaw.com

N. Kimberly Hoesl
State Bar No. 24040540
khoesl@drhrlaw.com

440 Louisiana St., Suite 2300
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

***Attorneys for Appellant***
***Kilgore Exploration, Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the foregoing Appellant's Motion for En Banc Reconsideration was delivered to all counsel of record by the method indicated below on March 9, 2015.

Kenneth P. Held
SCHIFFER ODOM HICKS AND JOHNSON PLLC
700 Louisiana St., Suite 1200
Houston, Texas 77002
Phone: (713) 357-5150
Facsimile: (713) 357-5160

by    X   Electronic filing service
        X   Certified Mail, Return Receipt Requested

Christopher Barnes
Apache Corporation
2000 Post Oak Blvd., Suite 100
Houston, Texas 77056
Phone: (713) 296-6511
Facsimile: (713) 296-6481

by    X   Electronic filing service
        X   Certified Mail, Return Receipt Requested

*Attorneys for Appellee Apache Corporation*

<u>/s/ N. Kimberly Hoesl</u>
N. Kimberly Hoesl

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this Appellant's Motion for En Banc Reconsideration contains 1,294 words (excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, table of authorities, statement of the case, statement of issues presented, signature, certificates of compliance and service, and appendix). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes, which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare this document.

/s/ N. Kimberly Hoesl
N. Kimberly Hoesl

# EXHIBIT 1



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00347-CV

_____

**KILGORE EXPLORATION, INC., Appellant**

**V.**

**APACHE CORPORATION, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-20264**

---

## MEMORANDUM OPINION

Appellant, Kilgore Exploration, Inc. ("Kilgore"), challenges the trial court's judgment, entered after a jury trial, in favor of appellee, Apache Corporation ("Apache"), in Apache's suit against Kilgore, and Kilgore's counterclaim against

Apache, for breach of contract. In three issues, Kilgore contends that the trial court erred in granting judgment for Apache, denying Kilgore's motion for judgment notwithstanding the verdict ("JNOV"), and not awarding Kilgore attorney's fees.

We affirm.

## Background

In 2008, Apache and Kilgore, who are engaged in the business of natural gas exploration and production, entered into a "Participation Agreement" (the "PA") to govern initial exploration and any dry hole costs associated with the drilling of an exploratory gas well (the "well") in an offshore block in the Gulf of Mexico, known as "Vermilion Block 141." And the parties executed an "Offshore Operating Agreement" (the "OOA") to govern in the event the well yielded gas and went into production.

Pursuant to the PA, the parties agreed as follows:

1.   PROJECT CONSIDERATION
    A.   . . . [E]ach participant agrees to participate in and bear its respective share of costs and expenses associated with the timely[1] drilling of the Required Well, in the Before Prospect Payout Percentages,[2] set out below, to the Objective Depth.

---

[1]   The PA required that drilling commence by December 31, 2008.

[2]   "Prospect Payout," as defined in the PA, is "that point in time when the gross proceeds from the sale of production from wells drilled by Participants" less various expenses, fees, and royalties, equals the reasonable and actual cost of drilling and associated expenses.

2

The Before Prospect Payout Percentages assessed eighty-five percent of the costs and expenses to Apache and fifteen percent to Kilgore.

Section two of the PA required Kilgore, contemporaneously with the execution of the PA, to deliver to Apache executed originals of the preliminary Authority for Expenditure (the "Preliminary AFE") for the well, which represented an estimate of the costs. And execution of the preliminary AFE "represent[ed] a binding obligation to participate in the drilling of [the well] on the basis of the Final AFE." Apache was to provide Kilgore, "[a]t least thirty . . . days prior to commencement of drilling," with a final Authority For Expenditure (the "Final AFE"). In the Final AFE, Apache was to estimate the costs associated with drilling the well, along with an advance billing for Kilgore's share of the estimated dry hole costs, as follows:

> 3.    REQUIRED WELL FINAL AFE
>
> At least thirty (30) days prior to commencement of operations on the Required Well, [Apache] shall provide to [Kilgore] the [F]inal AFE . . . to drill [the well] together with an advance billing for [its] share of the estimated dry hole cost. [Kilgore] shall execute and return the [F]inal AFE to [Apache] together with payment of [its] respective share of the estimate dry hole cost within ten (10) days of receipt of the Final AFE. . . .

The PA penalized any participant who, after executing the PA and Preliminary AFE, defaulted on its obligation to participate in the well, failed to

3

timely reply to the Final AFE, or failed to pay the advance billing under section three, as follows:

5. DEFAULT

A. Required Well: A Participant who defaults on its obligation to participate in the [well] . . . [or] fails to reply to the Final AFE within the allotted time or fails to pay the advance billing for drilling costs in the timeframe provided for in Section 3 above . . . shall automatically relinquish all right, title and interest in and to the Leases . . . . Notwithstanding the above, the non-defaulting Participant reserves all claims, rights or remedies which such non-defaulting Participant may have either at law or equity as a result of a defaulting Participant's failure to comply with the terms of this Agreement.

B. Default Notice: If any non-operator Participant fails to pay its share of an advance billing for an approved AFE, other than the Final AFE, as provided for in the OOA, Operator shall provide such Participant a default notice . . . .

And the parties further broadly agreed as follows:

15. MISCELLANEOUS

. . . .

E. Liability: EXCEPT AS OTHERWISE PROVIDED, THE PARTICIPANTS . . . SHALL SEVERALLY SHARE AND ASSUME THEIR RESPECTIVE PRORATA SHARES, ACCORDING TO THEIR BEFORE OR AFTER PROSPECT PAYOUT PERCENTAGES, AS THE CASE MAY BE, OF ANY AND ALL CLAIMS, LOSSES, AND EXPENSES (INCLUDING WITHOUT LIMITATION ALL COSTS, DEMANDS, DAMAGES, SUITS, JUDGMENTS, FINES, PENALTIES, LIABILITIES, DEBTS, ATTORNEYS' FEES, COSTS OF DEFENSE, AND CAUSES OF ACTION OF WHATSOEVER NATURE OR CHARACTER, WHETHER KNOWN OR UNKNOWN, AND INCLUDING WITHOUT LIMITATION, CLAIMS, LOSSES AND EXPENSES FOR PROPERTY DAMAGE . . .) DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATED TO OPERATOR'S . . . OPERATIONS . . . HEREUNDER,

REGARDLESS OF FAULT AND EXPRESSLY INCLUDING ANY NEGLIGENCE, FAULT, OR STRICT LIABILITY . . . OF THE OPERATOR, BUT EXPRESSLY EXCLUDING THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OPERATOR. . . .

Pursuant to the PA, Apache delivered to Kilgore a preliminary AFE, in which it estimated the costs to drill the well, perform testing, and plug and abandon it if dry, to be $2,811,785. In July 2008, Apache sent Kilgore a Final AFE and advance billing for the estimated dry hole costs in the amount of $3,477,465, of which Kilgore's share was $521,620. It is undisputed that Kilgore executed the AFEs and timely paid its share.

Apache then commenced operations and accepted delivery of a drilling rig, the *Ocean Crusader*, pursuant to its contract with Diamond Offshore.[3] The rig was towed to Vermilion Block 141, off the coast of Louisiana, and put into place on September 6, 2008. Two days later, Hurricane Ike forced the evacuation of the rig. When crews returned to the rig on September 16, 2008, they discovered that the hurricane had caused the rig to move eighty feet out of place and had buried the rig mat as much as nine feet into the seabed. The rig was returned to operational status, and drilling began on September 24, 2008. The well was dry, and it was plugged and abandoned on October 3, 2008. Because the rig mat required

---

[3] Diamond Offshore is not a party to this appeal.

5

extrication from the deep mud resulting from the hurricane, Apache was unable to release the rig back to Diamond Offshore until October 20, 2008.

In November 2008, Apache demanded from Kilgore a fifteen percent portion of the expenses incurred, including standby and additional day rates on the rig, returning the rig to operational status after the storm, and freeing the rig mat from the seabed after the well was plugged. These additional expenses to the joint interest totaled $3,839,061, of which Apache sought $575,859 from Kilgore. In December 2008, Kilgore paid Apache $91,559. When Kilgore later demanded return of the $91,559 and refused to pay anything further, Apache filed the instant lawsuit.

In its amended petition, Apache alleged that Kilgore "agreed to pay . . . [its] share of the expenses related to drilling a well" and had failed to "pay a balance of $444,237.43," which represents Kilgore's "share of the costs of drilling the well and plugging and abandoning the well."

Kilgore answered with a general denial, asserting numerous affirmative defenses and counterclaiming for breach of contract. It alleged that Apache had "failed to issue required AFEs," "failed to provide adequate documentation of its billing," and charged Kilgore for expenses that were unauthorized and caused by Apache's "own grossly negligent conduct," namely, taking possession of the drilling rig in the face of Hurricane Ike. Kilgore further sought a judgment

declaring that its liability to Apache is "controlled entirely by the PA and . . . limited to the amount it paid Apache under the Final AFE." And Kilgore sought to recoup its $91,559 "overpayment" to Apache.

The parties then executed a number of "Stipulations of Facts," agreeing and admitting as follows:

1. The Ocean Crusader Rig (the "Rig") . . . was evacuated due to Hurricane IKE from 9/08/08 through 9/16/08.

2. Charges billed by Apache to the joint interest while the Rig was evacuated due to Hurricane IKE from 9/08/08 through 09/16/08 total $800,238.02 ("Catergory 1"). Category 1 costs are identified on Exhibit A attached hereto and incorporated herein.

3. Apache returned to the Vermilion Block 141 . . . after Hurricane IKE on 9/16/08 and worked to return the Rig to operational status until 9/21/08. Apache charged the joint interest $833,834 for these costs as identified in Exhibit B attached hereto and incorporated herein . . . ("Category 2").

4. The [well] was spud on 9/24/08.

5. The Rig was utilized by Apache to drill the Well.

6. The Well was plugged and abandoned as a dry hole on October 3, 2008.

7. Apache worked to free the Rig mat buried beneath the sea floor from 10/04/08 through 10/20/08.

8. Charges billed by Apache to the joint interest while working to free the Rig mat buried beneath the ocean floor from 10/04/08 through 10/20/08 total $2,204,988.97 ("Category 3"). Category 3 costs are identified on Exhibit A attached hereto and incorporated herein.

9. Total Hurricane IKE related charges for Category 1 through Category 3 billed by Apache to the joint interest, and which are the basis of its claims in this case, are $3,839,061. Kilgore's fifteen percent allocation of this amount is $575,859. These

7

charges are summarized on Table 1 attached hereto and incorporated herein.

10. Apache and Kilgore stipulate and agree that these stipulations of fact are binding on the parties for all evidentiary purposes and that none of these costs must be proved at trial.

Kilgore then filed a summary-judgment motion challenging Apache's breach-of-contract claim. Kilgore asserted that the PA, and not the OOA, governed the parties' dispute, "the only 'estimated' cost in the Final AFE [was] the cost of plugging the well," the "Final AFE" constituted "the 'final' amount to be paid for the Required Well," Apache's expenses attributable to Hurricane Ike were unrelated to the cost of plugging the well, "[n]either the PA nor the AFE addressed such costs," and "Apache has no evidence of any agreement with Kilgore to pay such costs."

Apache responded, asserting that the Final AFE clause upon which Kilgore relies "unambiguously states" that the Final AFE is for "'estimated' dry hole costs," "the term 'Final AFE' simply means that the Final AFE was the last pre-drilling AFE issued to Kilgore, not that it capped Kilgore's liability for additional costs," and "the AFE itself is entitled, 'Drilling AFE Estimate of Costs and Authorization for Expenditures.'" Apache further asserted that "No one would prepare an AFE with estimated costs of a hurricane, since a hurricane could not have been predicted at the time of preparation of the AFE." The trial court did not rule on Kilgore's summary-judgment motion.

8

Apache then moved for a "Rule 166[4] Pre-Trial Ruling Construing Unambiguous Contract Provisions," seeking "pre-trial rulings on matters of law to aid in the disposition of the case." It agreed that the PA "is the governing document," and it asserted that the PA's terms are "unambiguous" and should be construed as a matter of law. Specifically, section one of the PA "makes it clear" that Kilgore is "obligated to pay 15% of the costs of a dry hole," and section three of the PA and the Final AFE "clearly state" that the Final AFE is an "estimate" of the dry hole costs. Apache sought a ruling that it was not required to seek supplemental authorization for the storm-related expenditures and Kilgore's share was "not capped at the Final AFE amount." Kilgore responded, asserting that the PA is ambiguous with respect to the term "Final AFE." Apache replied, asserting that section three makes clear that the Final AFE is an estimate and section fifteen "reinforces that the parties share all expenses."

The trial court granted Apache's motion "in its entirety," ruling that the PA "governs each party's payment for its share of the costs of drilling the Required Well," "does not cap Kilgore's share of costs to drill the Required Well [at] Kilgore's share of the Final AFE," and Apache was not required to provide supplemental AFEs regarding the storm-related costs. The trial court noted that the case would be tried to a jury and it would instruct the jury accordingly. The parties

---

4     *See* TEX. R. CIV. P. 166.

9

then executed a stipulation regarding the damages calculation to be applied at trial, including an offset for Kilgore's prior payment of $91,559.

At trial, Brian Ayers, a vice president of geoscience at Kilgore, testified that Kilgore "agreed to do what the [PA] says," but did not expect to be billed after the Final AFE. Frank Legros, a senior drilling engineering advisor at Apache, testified that weather-related costs are not included in AFEs because there is no way to predict and quantify such costs. And he noted that the Final AFE in this case was prepared and executed in July 2008, two months before Hurricane Ike. And Kirk Kuykendall, a senior land advisor at Apache, testified that Apache advised Kilgore in the drilling reports furnished each day about the costs being incurred. The parties also presented extensive testimony on the issue of Apache's gross negligence in taking delivery of the rig days before Hurricane Ike.

Kilgore then moved for a directed verdict on Apache's breach-of-contract claim, asserting that there is no evidence that (1) either the PA or the Final AFE included the charges for which Apache was seeking payment or (2) other charges could be assessed after the Final AFE. The trial court denied the motion, stating that the Final AFE was "not the final tally of any and all sums that could ever be due." Apache argued that because it was undisputed that Kilgore had not paid those charges, the only matter to be submitted to the jury was whether Apache had been grossly negligent in taking delivery of the rig.

10

Kilgore submitted proposed jury questions on the issues of whether it had agreed in the PA to pay fifteen percent of the stipulated Hurricane-Ike related charges and had failed to comply with the PA; whether any such failure to comply was excused by a prior breach by Apache; and whether Apache had breached the PA. The trial court rejected Kilgore's proposed questions and submitted only a question on the issue of whether Apache was grossly negligent in taking delivery of the rig. And the jury found that Apache was not grossly negligent in taking delivery of the rig.

Kilgore then filed its motion for JNOV, arguing that because Apache had not submitted any issues to the jury on its breach-of-contract claim, it therefore had "waived its sole cause of action." And it asserted that Apache's claim was not supported by the pleadings or the evidence.

The trial court denied Kilgore's motion for JNOV, and it entered a judgment that, "[b]ased on the jury's findings, the evidence presented at trial, and the stipulation between the parties as to the calculation of damages," Apache recover from Kilgore actual damages in the amount of $444,237 on its breach-of-contract claim. And it ordered that Kilgore take nothing on its claims.

**Pleadings**

In its first issue, Kilgore argues that the trial court erred in denying its motion for JNOV and granting judgment for Apache because the judgment is not

11

supported by the pleadings. Kilgore asserts that "Apache's sole pleaded cause of action was for breach of contract based on Kilgore's alleged failure to pay certain JIBs [joint interest billings]"; "[t]here is simply no procedure in the [PA] for the issuance of additional billings nor any requirement for payment of such"; and the trial court's judgment is based on the PA, "which does not obligate Kilgore to pay JIBS."

A trial court's judgment must "conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which [it] may be entitled either in law or equity." TEX. R. CIV. P. 301. A trial court may not grant relief on a theory of recovery not sufficiently stated in the party's pleadings or tried by consent. *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex. 1979); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 106 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

In its first amended petition, Apache alleges, in pertinent part, as follows:

IV.     Claims for Relief

    A.     Breach of Agreement

        10.     . . . . Kilgore agreed to pay Apache for Kilgore's share of the expenses related to drilling a well on the block. These expenses are known as joint interest billings. Kilgore owes Apache joint interest billings in the amount of $444,237.43 for Kilgore's share of the drilling of the well, which have remained unpaid.

12

Apache asserts that "[f]rom the outset of this case, Kilgore has understood that Apache's claims were based on the [PA]." Apache notes that Kilgore, in its summary-judgment motion, asserted, "Although Apache does not specify which agreement, the PA is the only agreement that applies to the costs for which Apache is suing." Apache explains that the term "'joint interest billings' simply means 'expenses' incurred in a joint project; it is not a term of art or limited to the billings under the OOA." Indeed, the term "joint interest billing" is a "term commonly used in the oil and gas industry to refer to a statement periodically submitted by the operator to the working interest owners to obtain payment of their proportionate share of a lease's operating expenses." *C.K. Oil Props., Inc. v. Hrubetz Operating Co.*, No. 11-99-00066-CV, 2002 WL 32344609, at *14 (Tex. App.—Eastland Apr. 25, 2002, no pet.) (not designated for publication).

Here, the PA provides, in its preliminary recitals and section one, that Kilgore and Apache each "agree[d] to participate in and bear its respective share of costs and expenses" associated with the drilling of the well and "drilling operations." And section fifteen provides that the parties broadly agreed to "share and assume their respective prorata shares, . . . *of any and all* claims, *losses, and expenses* (including without limitation all costs, demands, damages, suits, judgments, fines, penalties, liabilities, debts, attorneys' fees, costs of defense, and causes of action of whatsoever nature or character, *whether known or unknown*,

and including without limitation, claims, losses and expenses for property damage . . .) *directly or indirectly* arising out of or related to [Apache's] . . . operations . . . hereunder." (Emphasis added.) The parties also stipulated that the expenses at issue constitute "charges *billed* by Apache to the *joint interest*." (Emphasis added.)

Kilgore asserts that Apache "pleaded a cause of action for damages that exist, if at all, only via the OOA," which the parties agreed does not apply. It asserts the PA itself "recognizes that any billing beyond the Final AFE would be covered under the OOA" in the "Default Notice" provision at section 5, as follows:

> If any non-operator Participant fails to pay its share of an advance billing for *an approved AFE, other than the Final AFE, as provided for in the OOA*, Operator shall provide such Participant a default notice . . .

(Emphasis added.) Nothing in the emphasized language, however, restricts any and all billings beyond the Final AFE to the OOA. The Final AFE itself states that it is an "Estimate of Costs."

We conclude that Apache's pleading stated a breach-of-contract claim under the PA. Accordingly, we hold that the trial court did not err in denying Kilgore's motion for JNOV and granting judgment for Apache on this point.

We overrule Kilgore's first issue.

14

## Jury Issues

In its second issue, Kilgore argues that the trial court erred in granting judgment for Apache because it "waived its sole pleaded cause of action by failing to submit jury issues on any element of its breach of contract claim."

It is well-settled that "[a]ll independent grounds of recovery . . . not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279. If the evidence conclusively establishes the elements of a claim, it is established as a matter of law and may be part of the judgment, "even if no jury question on the claim was submitted." *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex. 2005) (noting "[j]urors are not free to reach a verdict contrary to [the] evidence")).

The elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of breach. *Id.* In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Id.* at 312. No single provision

15

is given controlling effect. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Frost Nat'l Bank*, 165 S.W.3d at 312. However, if the meaning of the contract remains uncertain or is susceptible to more than one reasonable interpretation, it is ambiguous. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). Whether a contract is ambiguous is a question of law to be determined "by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 394. A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993). A simple lack of clarity or disagreement between parties does not render a term ambiguous. *See DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

Here, the parties do not dispute that the PA is a valid contract. *See Bank of Tex.*, 276 S.W.3d at 677. Rather, they dispute whether the terms of the PA require Kilgore to pay fifteen percent of the storm-related expenses. The PA, in its preliminary recitals and section one, provides that Apache and Kilgore agreed to "conduct drilling operations of the [well] pursuant to the terms and conditions set

16

forth" and each would "participate in and bear its respective share of costs and expenses associated with the timely drilling of the [well]." And the PA assesses fifteen percent of the costs and expenses to Kilgore. Thus, Kilgore expressly agreed to bear fifteen percent of the costs and expenses associated with the drilling of the well and drilling operations. *See Coker*, 650 S.W.2d at 394 ("In harmonizing . . . provisions, terms stated earlier in an agreement must be favored over subsequent terms.").

Pursuant to section three of the PA, the parties agreed that, "prior to commencement of operations," Apache was to provide Kilgore with a Final AFE and "an *advance* billing for [Kilgore's] share of the *estimated* dry hole cost." In interpreting a contract, we give common words their plain meaning unless the context indicates the words were used in another sense. *Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). An "estimate" is "an approximate judgment" or "calculation." OXFORD ENGLISH DICTIONARY, 867 (Oxford Univ. Press, 6th ed., 2007). Thus, prior to drilling, Apache provided Kilgore with an approximation of the costs to be incurred. Nothing in the terms "advance" and "estimate" suggests that Apache intended to waive any and all further expenses. *See Frost Nat'l Bank*, 165 S.W.3d at 312 (noting we construe contracts "from a utilitarian standpoint bearing in mind the

17

particular business activity sought to be served" and "will avoid when possible . . . a construction which is unreasonable, inequitable, and oppressive").

Finally, in section fifteen of the PA, the parties agreed that each would be bear its respective share of "*any and all* . . . expenses (including without limitation all costs . . . whether *known or unknown* . . .) *directly or indirectly* arising out of or related to [Apache's] . . . operations," absent gross negligence by Apache. (Emphasis added.) *See id.* at 311–12 (noting entire writing must be considered in attempting to harmonize and give effect to all provisions of contract).

When, as here, after the pertinent rules of construction are applied, an agreement can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *See Frost Nat'l Bank*, 165 S.W.3d at 312; *see also Coker*, 650 S.W.2d at 394 (noting determination of whether contract is ambiguous is question of law). We conclude that the PA is not ambiguous and obligates Kilgore to pay its share of "any and all" costs and expenses associated with the drilling of the well and drilling operations, including the storm-related expenses. Because the evidence conclusively establishes this element, submission of a jury question on this issue was not required. *See City of Keller*, 168 S.W.3d at 814–15; *Bank of Tex.*, 276 S.W.3d at 677.

Also, determining whether a party has breached a contract is a question of law for a trial court, rather than a question of fact for a jury, when the facts of the

18

parties' conduct are undisputed or conclusively established. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010); *May v. Ticor Title Ins.*, 422 S.W.3d 93, 100 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied) ("Where the evidence is undisputed regarding a party's conduct under a contract, the judge alone must determine whether it shows performance or breach of its contract obligation."). Here, it is undisputed that Kilgore did not tender payment under the PA for its fifteen percent share of the storm-related expenses.

Further, the parties stipulated to the total expenses that Apache billed to "the joint interest" and how damages were to be calculated at trial. The parties agreed that the total amount incurred by the joint interest was $7,049,440, of which $3,839,061 was for storm-related expenses. And the parties stipulated that Kilgore's share of the storm-related expenses was $575,859, as billed, less an offset of $91,559 for its prior payment. "A stipulation serves as proof on an issue that otherwise would be tried," is "conclusive on the issue addressed," and estops the parties from claiming to the contrary. *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 641 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Finally, although the parties disputed whether Apache performed under the PA, in that Kilgore asserted that Apache was grossly negligent in taking possession

19

of the drilling rig in the face of Hurricane Ike, the matter was tried to the jury, who returned a verdict in favor of Apache. *See Bank of Tex.*, 276 S.W.3d at 677. And Kilgore does not challenge the jury's gross-negligence finding.

Thus, Apache conclusively proved the elements of its breach-of-contract claim, subject to whether it acted with gross negligence in its performance, which the jury answered in favor of Apache. *See id.* There being no further factual disputes, we hold that Apache was not required to submit questions on these elements to the jury to support its breach-of-contract claim. *See City of Keller*, 168 S.W.3d at 814–15; *Bank of Tex.*, 276 S.W.3d at 677.

We overrule Kilgore's second issue.

## Attorney's Fees

In its third issue, Kilgore argues that the trial court erred in not awarding it attorney's fees because it "is the prevailing party and is entitled to recover its attorneys' fees under both the [PA] and under Section 37.009 of the Civil Practice and Remedies Code." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). Kilgore asserts that recovery of its $402,599.81 in attorneys' fees and expenses "would be equitable and just in this case."

Having concluded above, however, that Apache did not, as Kilgore asserts, waive its breach-of-contract claim, Kilgore did not prevail and is not entitled to

20

attorney's fees.  Thus, the trial court did not err in not awarding Kilgore attorneys' fees under the PA.

In regard to section 37.009, a trial court, in a declaratory judgment action, "may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.*  In its amended answer, Kilgore sought a judgment declaring that its liability to Apache is "controlled entirely by the PA and [was] limited to the amount it paid Apache under the Final AFE."  Kilgore asserts that "one of its arguments in [its] motion for summary judgment was that the [PA] was the only contract governing this dispute."  Kilgore further argues that because Apache "conceded" in its motion that the PA controls Kilgore's payment obligations to Apache, Kilgore prevailed on this issue and is entitled to attorney's fees.

The statute provides that a trial court "*may* award costs and reasonable attorney's fees as are equitable and just."  *Id.* (emphasis added).  Thus, it was within the trial court's discretion as to whether to award attorney's fees to Kilgore.  It is undisputed, however, that the trial court did not rule on Kilgore's summary-judgment motion.  Moreover, in its response to Kilgore's summary-judgment motion, Apache itself quoted the PA in support of its argument.  Thus, Kilgore has not demonstrated that this was a contested issue.  Accordingly, we hold that the trial court acted within its discretion in not awarding Kilgore attorney's fees on its declaratory-judgment action.  *See id.*

21

We overrule Kilgore's third issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings and Higley.[5]

---

[5] The Honorable Jim Sharp, former Justice of this Court, was a member of the panel and present for argument when this case was submitted. Because his term expired on December 31, 2014, he did not participate in the decision of the case. *See* TEX. R. APP. P. 41.1(b).